STOTT REALTY CO. v. DETROIT SAVINGS BANK.

1. DURESS—CORPORATIONS—INTERNECINE STRIFE.

Creditor's knowledge of corporate debtor's internecine strife and making of exaction of money in extending time for redemptions under mortgage and execution levy sales *held*, insufficient to support claim of duress where there was nothing in the situation requiring creditor to be indulgent.

2. SAME—COERCION.

Coercion essential to constitute duress must be something more than legal enforcement of unquestioned liquidated pecuniary obligations.

3. SAME—RECOVERY OF PAYMENTS.

Payments coerced by duress may be recovered but the coercion must be illegal in nature, manifestly unjust or purposely oppressive.

4. SAME—DEBTOR AND CREDITOR—EXACTION FOR EXTENDING PERIOD OF REDEMPTION FROM SALE ON LEVY OF EXECUTION.

It is not illegal, unjust or oppressive, in the sense of coercion constituting duress, for a creditor to take legal measures to

collect unquestioned obligations nor was it such under option agreement extending time of redemption from sale on levy of execution for a consideration authorized by court, consented to by debtor's counsel and exercised in the repurchase of property.

5. EXECUTION—EXCESSIVE LEVY—ABUSE OF PROCESS.
    An excessive levy may disclose an abuse of process.

Appeal from Wayne; Houghton (Samuel G.), J., presiding. Submitted October 17, 1935. (Docket No. 35, Calendar No. 38,560.) Decided January 6, 1936. Rehearing denied January 31, 1936.

Action by Stott Realty Company, a Michigan corporation, against the Detroit Savings Bank for alleged coercion and duress in exaction of money in extending time for redemption from sale on levy of execution. Verdict and judgment for plaintiff. Defendant appeals. Plaintiff cross-appeals. Reversed, without a new trial.

*Thomas A. E. Weadock,* for plaintiff.

*Miller, Canfield, Paddock & Stone,* for defendant.

WIEST, J.  Claiming an illegal exaction of money in extending the time for redemptions under mortgage and execution levy sales, plaintiff sued for recovery thereof, charging payment under duress, and, upon trial by jury, had verdict and judgment thereon for one-half of the claimed exaction. Both parties appeal; plaintiff to have the judgment doubled, and defendant to be freed therefrom.

Much history of events, applicable to the case at bar, is set forth in *Stott Realty Co.* v. *Orloff,* 262 Mich. 375, and need not be here repeated.

Plaintiff corporation owned valuable real estate in the city of Detroit and was heavily indebted to

defendant upon secured and unsecured obligations. The unsecured indebtedness amounted to $534,964.35, when reduced to judgment.

Previous to judgment defendant demanded payment and threatened suit with writs of garnishment against tenants of plaintiff's buildings. Plaintiff, being unable to meet its obligations, applied to the court for appointment of a receiver. After such application, and before appointment of a receiver, defendant brought suit at law against plaintiff, and caused writs of garnishment to be served upon many of plaintiff's tenants. Some of the writs of garnish ment were voluntarily released and the others quashed, but the suit proceeded to judgment in favor of plaintiff therein, followed by execution, levy and sale thereunder of real property of plaintiff herein.

When the period of redemption from sale was quite at the point of expiring and plaintiff and its receiver were unable to finance redemption, but had expectation of being able to do so in the near future, by way of a loan awaiting action held up by recalcitrant stockholders in plaintiff corporation, it was agreed between the defendant and the receiver, acting under express authority applied for and granted by the court, that in case title vested in defendant, upon payment of $1,000, the receiver have an exclusive option to repurchase, within 60 days, upon paying an additional $39,000.

The court order, authorizing the receiver to enter into the option agreement, bound both the receiver and plaintiff to the terms thereof if, and when, exercised.

The receiver assigned the option to plaintiff, as directed by the court. Plaintiff exercised the option, paid the price demanded and obtained the transfers thereunder.

The declaration charged in part:

"That on March 27, 1931, said circuit court made an order that Detroit Trust Company, receiver, should pay to said defendant, $1,000 as a first payment on the sum of $40,000 for an option for an extension of time to redeem said properties, and when the funds were later obtained through the mortgage to said Massachusetts Mutual Life Insurance Company, the balance of the $39,000 was paid to said defendant, together with all sums due the Detroit Savings Bank from said plaintiff, such amount being knowingly and designedly concealed in the amount of indebtedness to be paid to said defendant with seven per cent. interest, which total indebtedness was paid to said defendant from the proceeds of said mortgage."

The latter part may be taken in the sense of pleader's license for just how, and why, the option price, authorized by the court order, approved by all counsel, including present counsel, should or could be so concealed is not apparent, and is also somewhat contradictory of the following allegation also in the declaration:

"And plaintiff negotiated with said defendant for an extension of said redemption period and so to prevent a loss to plaintiff of several million dollars in its property, and said defendant refused any extension and demanded $40,000 for an option of 60 days, well knowing all the premises, which said plaintiff by duress of circumstances, and involuntarily, was compelled to pay."

Plaintiff, by stress of finances and lack of coordination among its stockholders toward its management and welfare, could not make redemption within the statutory period of right * and, through

---

* See 3 Comp. Laws 1929, § 14631.—Reporter.

its receiver, so authorized by the court, procured the option and agreed to pay $40,000 upon full exercise thereof, and thereunder made the repurchase and paid the price so fixed.

No "camouflage" was needed, and it would have been sheer uselessness to have attempted any.

Plaintiff's charge of duress is that, by the exaction of $40,000, it was forced to agree thereto and later to pay the same in order to save its property, and the animus, alleged to remove the exaction from the realm of right of contract, and tar it as a wrong, is based upon plaintiff's internecine war and consequent financial stress, claimed to have been known to defendant. There was nothing in this requiring defendant creditor to be indulgent. The self-inflicted situation of plaintiff would quite likely lead its creditor to take legal measure for self-protection.

The coercion essential to constitute duress must be something more than legal enforcement of unquestioned liquidated pecuniary obligations. This applies to all proceedings anterior to the option agreement. The need of the option agreement was brought about by want of concord in the internal affairs and management of plaintiff corporation, and the obligation thereof cannot be separated from the benefit obtained and retained.

Payments coerced by duress may be recovered. The coercion, however, must be illegal in nature, manifestly unjust, or purposely oppressive. It was not illegal, unjust nor oppressive, in the sense of coercion, constituting duress, for defendant to take legal measures to collect the unquestioned obligations, nor was it such under the option agreement, authorized by the court, consented to by counsel, and exercised in the repurchase of the property, otherwise lost, under valid proceedings. Plaintiff's

straightened affairs and embarrassments were not of defendant's making.

An excessive levy may disclose an abuse of process, as in *Hannibal & St. Joseph R. R. Co.* v. *Brown,* 43 Mo. 294, where an execution for $144.15 was levied on 11,480 acres of land, but such is not at all the case at bar.

Plaintiff's alleged case comes to about this: That strife and feuds within the corporation and litigation had rendered it vulnerable and such weakness was seized upon by defendant to exact a hard bargain, euphoniously called duress.

Plaintiff was undoubtedly in financial distress, by reason of long-continued feuds and litigation, and the question is whether such and the consequences were capitalized by defendant, or are now being sought to be capitalized by plaintiff as grounds for release from the performed agreement.

The court should have directed a verdict for defendant.

The judgment is reversed without a new trial, and with costs to defendant.

North, C. J., and Fead, Butzel, Bushnell, Edward M. Sharpe, and Potter, JJ., concurred. Nelson Sharpe, J., did not sit.